**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**VOTE NO ON AMENDMENT ONE, INC.,**
**a West Virginia Corporation;**
**KATHERINE LEWIS; and**
**STACY NORTH**

   **Plaintiffs,**            **Civil Action No.** 2:18-cv-01406

**v.**

**MAC WARNER,**
**SECRETARY OF STATE OF THE**
**STATE OF WEST VIRGINIA**
  **in his official capacity as**
  **Secretary of State**

   **Defendant.**

**PLAINTIFFS' COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF FOR CONSTITUTIONAL VIOLATIONS**

**INTRODUCTION**

1. This is a case wherein Defendant Secretary of State Mac Warner violated the constitutional free speech rights of Plaintiffs Vote No On Amendment One, Inc., Katherine Lewis, and Stacy North when he enforced an unconstitutional statute that ultimately prohibited Plaintiffs from providing education about Amendment No. 1 to voters **anywhere on the property of a polling place** during early voting. His actions thereby deprived Plaintiffs of their rights to free speech and of the opportunity to meaningfully engage with voters mere days before the November 6, 2018 general election. The amendment, if passed, would empower politicians to pass laws to further restrict abortion care.

## PARTIES

2.      At all times relevant herein, Plaintiff Vote No on Amendment One, Inc. (hereinafter "Vote No Coalition") is and was a non-profit registered to do business in West Virginia with a principal place of business at 405 Capitol Street, Suite 507, Charleston, West Virginia, 25311.

3.      At all times relevant herein, Plaintiff Katy Lewis (hereinafter "Ms. Lewis") is and was a resident of Morgantown, Monongalia County, West Virginia, and a volunteer for the Vote No Coalition.

4.      At all times relevant herein, Plaintiff Stacy North (hereinafter "Ms. North) is and was a resident of Morgantown, Monongalia County, West Virginia, and a volunteer for the Vote No Coalition.

5.      Defendant Mac Warner (hereinafter "Secretary Warner") is and was at all relevant times herein the duly elected West Virginia Secretary of State, and pursuant to West Virginia Code Section 3-1A-6, is the chief election officer who is responsible for administering and enforcing the election laws of the state and is the Chief Elections Officer for the state. Defendant Warner is sued in his official capacity only.

## JURISDICTION AND VENUE

6.      Subject matter jurisdiction over the claims and causes of action asserted by the Plaintiffs in this case is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

7.      This suit is authorized by 42 U.S.C. § 1983.

8.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

9.      Venue is proper in the Southern District of West Virginia under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

**A.    The Vote No Coalition**

10.    The Vote No Coalition is, pursuant to its bylaws, "a nonprofit organized with a specific purpose, without limitation, to defeat Amendment No. 1, which will be on the West Virginia ballot in November 2018."

11.    Amendment No. 1 is a proposed amendment to the West Virginia Constitution on the ballot for the November 6, 2018 general election in West Virginia. If a majority of all votes cast voted in favor of Amendment No. 1, Article VI of the West Virginia Constitution would be changed to add a new Section 57, which would read: "Nothing in this Constitution secures or protects a right to abortion or requires the funding of abortion."

12.    In the months leading up to the November 6, 2018 election, the Vote No Coalition engaged in a comprehensive effort to provide West Virginians information about how the passage of Amendment No. 1 would empower politicians to pass laws that further restrict abortion care with no protections for survivors of rape, incest, or when the health or life of the woman is at risk. In urging West Virginians to vote no on Amendment No. 1, the Vote No Coalition employed strategies including, but not limited to, phone-banking, one-on-one conversations, and mass communications.

**B.    Early Voting and Relevant West Virginia Electioneering Law**

13.    West Virginia provides voters the opportunity to vote prior to election day during a set period of early voting.

14.    In 2018, the time period for early voting started on October 24 and concluded on November 3, three days in advance of the November 6, 2018 election.

15.    The Vote No Coalition, in its ongoing effort to educate voters about Amendment No, 1, engaged volunteers to provide information to voters outside of polling places during the early voting period.

16.    Pursuant to West Virginia Code Section 3-9-9, the Vote No Coalition directed volunteers to stand at or more than 100 feet away from the outside entrance of any polling place.

17.    West Virginia Code Section 3-9-9 provides:

No person may do any electioneering in the polling place or **within one hundred feet of the outside entrance of any polling place** where early voting is conducted during the period in which early voting is offered during the hours while such early voting is actually taking place.

Emphasis added.

**C.    Vote No Coalition Education Efforts on November 3, 2018**

18.    On November 3, 2018, Plaintiffs Ms. Lewis and Ms. North were scheduled to volunteer for Plaintiff Vote No Coalition from 3 p.m. to 5 p.m. at a polling location at the Mountaineer Mall in Morgantown.

19.    An organizer for the Vote No Coalition, in an effort to ensure that the volunteers would not violate the relevant election law, advised Ms. Lewis and Ms. North to stand at a location near a dumpster that was approximately 100 feet away from the entrance to the polling location.

20.    Shortly after Ms. North arrived at the polling location and began engaging with voters, a woman leaving the polling location raised her voice and told Ms. North in a hostile manner that she should not be allowed on the property and expressed disgust with the Vote No Coalition and its mission.

21.    Ms. Lewis arrived shortly thereafter.

22.     Subsequent to Ms. Lewis' arrival, a poll worker informed Ms. Lewis and Ms. North that they were not quite 100 feet away from the entrance to the polling location and advised them to move next to a red car in a nearby parking lot.

23.     Ms. Lewis and Ms. North complied with the poll worker's directive.

24.     After Ms. Lewis and Ms. North moved to the new spot, they began to engage with voters who were coming and going from the polling location. Ms. Lewis and Ms. North held signs, had literature available to distribute about the Vote No campaign, and answered questions that voters had about Amendment No. 1.

25.     On or about twenty minutes after Ms. Lewis and Ms. North moved to the new location, a man approached Ms. North and informed her that she and Ms. Lewis were not allowed to be anywhere on the property of the polling location—including in the parking lot.

26.     The man introduced himself as Secretary of State Mac Warner and informed Ms. North that there had been a complaint.

27.     Ms. North recognized Secretary Warner from previous interactions with him.

28.     Ms. North told Secretary Warner that her understanding of the law was that she and Ms. Lewis, on behalf of the Vote No Coalition, were entitled to be there, so long as they were 100 feet or more away from the entrance to the polling location.

29.     Secretary Warner advised Ms. North that West Virginia law provided that she and Ms. Lewis could not be anywhere on the property, even if their location was more than 100 feet from the entrance of the polling location.

30.     He suggested a location close to a busy road that was located approximately 700 feet from the entrance to the polling location and was not visible from the entrance of the polling location.

31.     Ms. North and Ms. Lewis relocated to the area Secretary Warner suggested.

32.     Because the location was next to ongoing traffic, the only opportunity Ms. North and Ms. Lewis had to communicate the Vote No Coalition's message to voters was by holding signage for drivers and passengers to see as they drove past the location. Ms. North and Ms. Lewis did not have the opportunity to have conversations with voters or to provide them literature.

33.     Voters were not walking to or from the polling location where Ms. North and Ms. Lewis were located because they were able to park much closer in the lot where Ms. North and Ms. Lewis had previously been located.

34.     Because voters were not able to walk at or near the location where Ms. Lewis and Ms. North located, Ms. North and Ms. Lewis were unable to engage in discussion with voters or provide them literature about Amendment No. 1.

35.     Secretary Warner approached Ms. Lewis and Ms. North shortly after they had relocated to the location he had suggested.

36.     Ms. Lewis looked up the relevant law on her phone, and asked Secretary Warner why they were not allowed anywhere on the property of the polling location.

37.     After Ms. Lewis read to Secretary Warner the text of Section 3-9-9, he placed a call to an attorney at the Secretary of State's office.

38.     Secretary Warner handed the phone to Ms. Lewis, and the attorney informed her that a separate statute prohibited Ms. Lewis and Ms. North from being **anywhere** on the grounds of the polling location, despite the conflicting language in Section 3-9-9.

39.     The statute to which Secretary Warner's office cited, Section 3-3-2a, provides:

> No person may do any electioneering nor may any person display or distribute in any manner, or authorize the display or distribution of, any literature, posters or material of any kind which tends to influence the voting for or against any candidate or any public question **on the property of the county courthouse, any annex facilities, or any other designated early voting locations within the county**, during the entire period of regular in-person absentee voting.

Emphasis added.

40.     The statute to which Secretary Warner's office cited, Section 3-3-2a, was last amended in 2011.  *See* W. Va. Code § 3-3-2a.

41.     In 2015, the Sixth Circuit Court of Appeals issued a decision finding that a 300-foot no political speech buffer zone around polling locations was not sufficiently tailored to any compelling public interest and thus violated the free speech clause of the First Amendment.  *See Russell v. Lundergan-Grimes, et al.*, 784 F.3d. 1037 (6th Cir. 2015).

42.     Section 3-9-9, which Ms. Lewis and Ms. North understood to be controlling and which allowed them to be at 100 feet or more from the entrance to the polling location, was last amended in 2017.  *See* W. Va. Code § 3-9-9.

43.     The 2017 amendment to Section 3-9-9 substituted "300 feet" for "100 feet," adjusting the buffer zone in a matter that would comply with the Sixth Circuit ruling.

44.     The statute to which Secretary Warner's office cited, Section 3-3-2a, provides an undefined and virtually limitless geographic restriction on campaigning activities outside of a polling place during early voting.

45.     The statute to which Secretary Warner's office cited, Section 3-3-2a, when enforced, could, in many situations, go well beyond the 300-foot buffer zone that the Sixth Circuit found to be unconstitutional.

46.     Indeed, when Secretary Warner enforced Section 3-3-2a against the Vote No Coalition, Ms. Lewis, and Ms. North, the Plaintiffs were ultimately placed at a spot that was located at a position more than twice the distance of a 300-foot buffer zone, which was the distance that had been found unconstitutional by the Sixth Circuit in 2015.

47.     The location was at least 600 feet farther away than the 100-foot buffer zone allowed by Section 3-9-9.

48.     Laws burdening political speech are subject to strict scrutiny, and the state must demonstrate that the restriction on speech is narrowly tailored to serve a compelling government interest.  *See, e.g., Burson v. Freeman,* 504 U.S. 191, 198 (1992).

49.     The statute is unconstitutionally overbroad in that it prohibits speech over an expanse of geography with virtually no limits to its restriction and is not narrowly tailored to serve a compelling government interest.  *See, e.g., Russell v. Lundergan-Grimes, et al.*, 784 F.3d. 1037 (6th Cir. 2015).

50.     The actions set forth herein have violated the free speech rights of Plaintiffs by restricting their right to meaningfully engage with voters at a permissible and sufficiently tailored distance to the polling location.

## CLAIMS FOR RELIEF

## COUNT I—VIOLATION OF THE FIRST AMENDMENT

51.    Plaintiffs incorporate herein the preceding paragraphs.

52.    Plaintiffs are citizens of the United States of America.

53.    Plaintiffs have clearly established free speech protections under the United States Constitution.

54.    Defendant, in his official capacity, using his respective office, and acting under the color of state law, deprived Plaintiffs of their free speech rights under the United States Constitution.

55.    Defendant Warner therefore subjected himself to prospective injunctive relief under 42 U.S.C. § 1983 and to declaratory relief under 28 U.S.C. § 2201.

56.    The First Amendment to the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . ."  The First Amendment has been incorporated under the Fourteenth Amendment to apply to the states. *See Gitlow v. New York*, 268 U.S. 652 (1925).

57.    Defendant abused the authority of his office and while acting under color of the law and with knowledge of the Plaintiffs' established rights, used his office to violate Plaintiffs' First Amendment rights.

58.     Section 3-3-2a of the West Virginia Code fails to establish standards sufficient to guard against the arbitrary deprivation of liberty interests.

59.    Plaintiffs seek declaratory relief and prospective injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, declaring West Virginia Code Section 3-3-2a unconstitutional on its face, because the statute is overbroad as the language "on the property of

the county courthouse, any annex facilities, or any other designated early voting locations within the county" is not narrowly tailored to meet compelling state interests.

60.    Plaintiffs further seek a permanent injunction enjoining enforcement of West Virginia Code Section 3-3-2a.

61.    Plaintiffs seek their reasonable attorneys' fees under 42 U.S.C. § 1988.

62.    Pursuant to Fed. R. Civil Procedure 5.1(a)(2) a copy of this Complaint has been served on the West Virginia Attorney General via certified mail to him at the following address: Capitol Complex, Building 1, Room E-26, 1900 Kanawha Boulevard E., Charleston, WV 25305.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

63.    Take original jurisdiction over this case;

64.    Enter a declaratory judgment that West Virginia Code Section 3-3-2a is unconstitutional on its face because it is overbroad insofar as it prohibits electioneering with no defined geographical limitation and is not narrowly tailored to serve a compelling government interest;

65.    That this Court award injunctive relief, prohibiting enforcement of West Virginia Code Section 3-3-2a;

66.    That Plaintiffs be awarded their fees and costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988.

67.    Such other relief as this Court shall deem just and proper.

Respectfully submitted.


**By Counsel**,

**AMERICAN CIVIL LIBERTIES UNION OF WEST VIRGINIA FOUNDATION**

/s/ Loree Stark_____
Loree Stark
Kentucky Bar No. 94882
*Application for admission pro hac vice pending*
ACLU of West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
(304) 345-9246, ext. 102 / (304) 345-0207 (f)
lstark@acluwv.org

/s/ Anthony J. Majestro_____
Anthony J. Majestro
West Virginia Bar No.  5165
ACLU of West Virginia Foundation
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

*Attorneys for Plaintiffs*

11