UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

VOTE NO ON AMENDMENT ONE, INC.
a West Virginia Corporation; KATHERINE LEWIS;
and STACY NORTH

      *Plaintiffs*,

v.                                          Civil Action No. 2:18-cv-1406
                                             (Honorable Thomas E. Johnston)

MAC WARNER, SECRETARY OF
STATE OF THE STATE OF WEST
VIRGINIA, in his official
capacity as Secretary of State

      *Defendant*.

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

**CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.     This Case Is Moot Because the Election Is Over and Issue One Has Passed ..................... 2

II.    Plaintiffs Claim Is Not "Capable Of Repetition But Evading Review" ............................. 4

CONCLUSION ....................................................................................................................... 7

CERTIFICATE OF SERVICE ............................................................................................... 1

## INTRODUCTION

This lawsuit pertains to an election that was completed nearly four months ago. The constitutional amendment Plaintiffs were advocating against has passed, and Plaintiffs are not facing prosecution or any threat thereof under the law they are challenging. Therefore, no issues remain outstanding for this Court to address, and this case should be dismissed as moot pursuant to Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

Plaintiff Vote No on Amendment One, Inc. ("Vote No") is a nonprofit corporation that was organized "with a specific purpose:" to advocate against a proposed amendment to the West Virginia Constitution in the November 6, 2018 election. Cmpl. ¶10. Plaintiffs Katherine Lewis ("Lewis") and Stacy North ("North") were volunteers with Vote No. Cmpl. ¶¶3-4. Plaintiffs allege that Lewis and North were engaged in electioneering activity supporting Vote No on November 3, 2018, the last day of the early voting period. Cmpl. ¶18. *See also* W. Va. Code § 3-3-3(a) ("The voting period for early in-person voting is to be conducted during regular business hours beginning on the thirteenth day before the election and continuing through the third day before the election.)". Plaintiffs further allege that Defendant informed them that West Virginia Code Section 3-2-2a prohibits such activities on the property of any polling location during early in-person voting. Cmpl. ¶¶ 38-39. Plaintiffs claim that enforcing this statute against them violates the First Amendment. Cmpl. ¶54.

Plaintiffs filed this suit under the Declaratory Judgment Act after early voting had ended and the day before the election, on November 5, 2018. Cmpl. ¶¶8, 64. Plaintiffs did not allege any criminal or civil action related to Section 3-2-2a had been initiated against them, or even threatened. Nor did Plaintiffs seek any emergency or expedited relief. Indeed, Plaintiffs did not

even serve the summons and complaint on Defendant until February 12, 2019, a full three months after the election was complete. Returned Summons, ECF Docket No. 7.[1]

## ARGUMENT

This case should be dismissed, as federal courts do not have jurisdiction to hear moot cases. Plaintiffs' claim arose solely in the context of a completed election, and thus does not present an "immediate case or controversy" that is real and ongoing. Moreover, Plaintiffs' claim is not within the narrow class of moot claims that remain within federal courts' jurisdiction, as Plaintiffs cannot meet their burden of showing their claim is "capable of repetition but evading review."

### I.     There Is No Immediate Controversy In This Case Because The Election Is Over.

"Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988) (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "No federal court, whether [the Supreme] Court or a district court, has 'jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies.'" *Golden v. Zwickler*, 394 U.S. 103, 110 (1969) (quoting *Liverpool, N.Y. & P.S.S. Co. v. Commissioners*, 113 U.S. 33, 39). As one "branch of [this] constitutional command," federal courts have no jurisdiction over moot cases—cases that are "no longer 'live' or [where] the parties lack a legally cognizable interest

---

[1] Plaintiffs mailed a summons to Defendant on January 14, 2019, but Federal Rule of Civil Procedure 4 does not authorize service by mail. Plaintiffs did not request waiver of service, and instead made personal service on Defendant's authorized representative.

2

in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496-97 n.7 (1969) (citing *Sibron v. New York*, 392 U.S. 40, 57 (1968); E. Borchard, *Declaratory Judgments* 35—37 (2d ed. 1941)).

"This is as true of declaratory judgments as any other field." *Golden*, 394 U.S. at 108 (citing *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)). "[W]hether a request for declaratory relief had become moot" depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'" *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (quoting *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273 (1941) (emphasis added)).

In the context of election laws, claims under the Declaratory Judgment Act related to a specific election cease to be an immediate controversy after the election in question is complete. For example, the plaintiff in *Golden* challenged a statute that prevented him from distributing literature about a specific candidate in an upcoming election. *Golden*, 394 U.S. at 105-06. After the election, the congressional candidate in question accepted an unrelated position with a term of office of 14 years, making it "most unlikely" that he would be a candidate for Congress again. *Id*. at 110. *See also id.* n.4. Therefore, the plaintiff's claim "focus[ed] upon the then forthcoming . . . election," and after that election was complete it was "wholly conjectural that another occasion might arise when [plaintiff] might be prosecuted for distributing the handbills referred to in the complaint." *Id.* at 109. The mere possibility that a candidate will become a candidate again, without more, did not constitute a "real or immediate" case or controversy. *Id*. at 110.

Here, Plaintiffs' claim is even more confined to a past election than the claim raised in *Golden*. *Golden* related to electioneering against a candidate, whereas Plaintiffs' electioneering activity arose in the narrow and limited context of opposing one particular constitutional

3

amendment. Indeed, Vote No was formed for that "specific purpose." Cmpl. ¶10. As this amendment was adopted[2], it will not be proposed again and voted on in future elections. Thus, the prospect of any further electioneering by Vote No is less than "conjectural;" it is affirmatively unlikely. Lewis and North may choose to engage in other issues in future elections, but this generalized possibility is "wholly conjectural," the same as the possibility that a former candidate would become a candidate again in *Golden*. *Golden*, 394 U.S. at 109. Accordingly, this claim presents no immediate controversy for adjudication, is moot, and is not within this Court's jurisdiction.

## II.    Plaintiffs' Claim Is Not "Capable Of Repetition But Evading Review"

A narrow exception to the prohibition against hearing moot cases exists for cases that present an issue "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). This exception applies "only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974)). Plaintiffs cannot show that the allegations underlying this case will ever arise again, much less arise against them specifically. Therefore, this narrow exception does not save Plaintiffs' claim from being well and truly moot.

---

[2] *See November 6, 2018 General Election Official Results*, WEST VIRGINIA SECRETARY OF STATE (Jan. 16, 2019, 4:49 PM), https://results.enr.clarityelections.com/WV/92360/Web02-state.222648/#/.

4

This exception to the mootness doctrine "is predicated on a 'predictable effect on the very plaintiff before the court[.]'" *Linkenhoker v. Weinberger*, 529 F.2d 51, 52–53 (4th Cir. 1975) (quoting 13 C. Wright and A. Miller, *Federal Practice and Procedure*, s. 3533 at 286-87 (1975)). For example, where a law student "will never again be required to run the gauntlet of the Law School's admission process," a challenge to said admissions process "is certainly not 'capable of repetition' so far as he is concerned." *DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974). Here, the amendment Vote No was created to oppose has been ratified, and therefore cannot be re-introduced. Thus, it is all but certain that Vote No "will never again run the gauntlet" of campaigning against it. *DeFunis*, 416 U.S. at 319.

This exception to the mootness doctrine can apply when courts address matters that "often come[] more than once to the same" person. *Roe v. Wade*, 410 U.S. 113, 125 (1973) (holding modified by *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992)). For example, where a State "maintains her present system" for the nomination of candidates for statewide office year-to-year, injuries alleged to arise from that continuous system are "capable of repetition" in each election. *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969) (quoting *Southern Pacific Terminal Co.* 219 U.S. at 515).

The claim at issue in this case does not relate to the selection of candidates, which must occur every two years for many statewide candidates, but to electioneering activities at specific satellite voting locations only during the early voting period. With respect to satellite voting locations, the State of West Virginia does not "maintain[] her present system", *id*., in every election. Rather, county commissions may select satellite locations at the outset of each election. W. Va. Code § 3-3-2a(b). This is done 90 days before each election, whether it be a primary,

general, or special election, and is only valid for that single election. W. Va. Code St. R. § 153-13-3.4.

The nature of the satellite voting locations in question is critical to Plaintiffs' claim, because their claim could not arise at any and every satellite voting location. Plaintiffs are only challenging the requirement that electioneering not take place "on the property" of any "designated voting location," set forth in West Virginia Code Section 3-2-2a(d)(5). Cmpl. ¶¶51-62. Plaintiffs are not challenging the separate but overlapping requirement set forth in West Virginia Code Section 3-9-9(c), that electioneering not take place "within one hundred feet of the outside entrance of any polling place where early voting is conducted." *Id*. Indeed, Plaintiffs note that the buffer established by West Virginia Code Section 3-9-9(c) "would comply with" the case relied on in the complaint. Cmpl. ¶43. At any satellite location where the property line is located within one hundred feet of the entrance, the allegedly unconstitutional boundary established by Section 3-2-2a(d)(5) is subsumed within the unchallenged boundary established by Section 3-9-9(c).

Thus, unless and until a county board designates a voting location with a property line that is more than one hundred feet from its entrance, Plaintiffs cannot "make a reasonable showing that" *anyone*—least of all themselves—will be subject to the challenged statute. *Lyons*, 461 U.S. at 109. Accordingly, the narrow exception to the mootness doctrine does not apply to this claim, and this case remains outside the jurisdiction of this Court.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' complaint.

Respectfully submitted,

/s/ *Thomas T. Lampman*

Thomas T. Lampman
(WV Bar No. 13353)
Assistant Attorney General
OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
State Capitol
Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email:
thomas.t.lampman@wvago.gov

*Counsel for Mac Warner, Secretary of State of the State of West Virginia, in his official capacity as Secretary of State*

DATE: March 5, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of March, 2019, the foregoing has been served electronically on all parties represented by counsel using the Court's CM/ECF system.

/s/ *Thomas T. Lampman*
Thomas T. Lampman
(WV Bar No. 13353)
Assistant Attorney General
OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
State Capitol
Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email: thomas.t.lampman@wvago.gov

*Counsel for Mac Warner, Secretary of State
of the State of West Virginia, in his official
capacity as Secretary of State*
