IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

VOTE NO ON AMENDMENT ONE, INC.,
a West Virginia Corporation;
KATHERINE LEWIS; and
STACY NORTH

    Plaintiffs,

v.

                            Civil Action No. 2:18-cv-1406
                            (Honorable Thomas E. Johnston)

MAC WARNER, SECRETARY OF
STATE OF THE STATE OF
WEST VIRGINIA, in his official
Capacity as Secretary of State

    Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE
TO DEFENDANT'S MOTION TO DISMISS**

**I.    INTRODUCTION**

This is a case wherein Defendant Secretary of State Mac Warner violated the constitutional free speech rights of Plaintiffs Vote No On Amendment One, Inc. (hereinafter "Vote No Coalition"), Katherine Lewis, and Stacy North when he prohibited them from engaging with voters within a constitutionally permissible distance from a polling location.

**II.    BACKGROUND AND STATEMENT OF THE FACTS**

The Vote No Coalition is, pursuant to its bylaws, "a nonprofit organized with a specific purpose, without limitation, to defeat Amendment No. 1, an amendment which was on the West Virginia ballot in November 2018." Compl. ¶ 10. The then-proposed amendment, if passed, would

change Article VI of the West Virginia Constitution to add a new Section 57, which would read: "Nothing in this Constitution secures or protects a right to abortion or funding of abortion." Compl. ¶ 11.

In the months leading up to the November 6, 2018 election, the Vote No Coalition engaged in a comprehensive effort to provide West Virginians information about how the passage of Amendment No. 1 would empower politicians to pass laws that further restrict abortion care with no protections for survivors of rape, incest, or when the health or life of the woman is at risk. Compl. ¶ 12. In urging West Virginians to vote no on Amendment No. 1, the Vote No Coalition employed strategies including, but not limited to, phone-banking, one-on-one conversations, and mass communications.

In 2018, the time period for early voting started on October 24 and concluded on November 3, three days in advance of the November 6, 2018 election. Compl. ¶ 14. The Vote No Coalition, in its ongoing effort to educate voters about Amendment No, 1, engaged volunteers to provide information to voters outside of polling places during the early voting period. Compl. ¶ 15.

On November 3, 2018, Plaintiffs Ms. Lewis and Ms. North were scheduled to volunteer for the Vote No Coalition from 3 p.m. to 5 p.m. at a polling location at the Mountaineer Mall in Morgantown. Compl. ¶ 18. An organizer for the Vote No Coalition, in an effort to ensure that the volunteers would not violate the relevant election law, advised Ms. Lewis and Ms. North to stand at a location near a dumpster that was approximately 100 feet away from the entrance to the polling location. Compl. ¶ 19.

Shortly after Ms. Lewis' arrival, a poll worker informed them that they were not quite 100 feet away from the entrance to the polling location and advised them to move next to a red car in a nearby parking lot. Compl. ¶ 22. After Ms. Lewis and Ms. North moved to the new spot, they began to engage with voters who were coming and going from the polling location.

Compl. ¶ 24. Ms. Lewis and Ms. North held signs, had literature available to distribute about the Vote No campaign, and answered questions that voters had about Amendment No. 1. *Id.*

On or about twenty minutes after Ms. Lewis and Ms. North moved to the new location, a man, who introduced himself as Secretary of State Mac Warner, approached Ms. North and informed her that she and Ms. Lewis were not allowed to be anywhere on the property of the polling location—including in the parking lot. Compl. ¶¶ 25-26.

Ms. North told Secretary Warner that her understanding of the law was that she and Ms. Lewis, on behalf of the Vote No Coalition, were entitled to be there, so long as they were 100 feet or more away from the polling location. Compl. ¶ 28. Secretary Warner advised Ms. North that West Virginia law provided that she and Ms. Lewis could not be **anywhere** on the property, even if their location was more than 100 feet from the entrance of the polling location. Compl. ¶ 29. Secretary Warner suggested a location close to a busy road that was located approximately 700 feet from the entrance to the polling location and was not visible from the entrance of the polling location. Compl. ¶ 30.

Ms. North and Ms. Lewis relocated to the area Secretary Warner suggested. Compl. ¶ 31. Because the location was next to ongoing traffic, Ms. North and Ms. Lewis did not have the opportunity to engage with voters beyond holding signage for drivers to see as they drove past the location. Compl. ¶ 32. Ms. Lewis and Ms. North were deprived of the opportunity to have conversations with voters or to provide them with literature. *Id.*

Voters were not walking to or from the polling location through the area where Ms. North and Ms. Lewis were located because they were able to park much closer in the parking lot where Ms. North and Ms. Lewis had previously been located. Compl. ¶ 33. Because voters were not able to walk at or near the location where Ms. Lewis and Ms. North were located,

Plaintiffs were unable to engage in discussion with voters or provide them literature about Amendment No. 1. Compl. ¶ 34.

Secretary Warner approached Ms. Lewis and Ms. North shortly after they relocated. Compl. ¶ 35. Ms. Lewis looked up the relevant law—West Virginia Code Section 3-9-9—on her phone and asked Secretary Warner why they were not allowed on the property of the polling location. Compl. ¶¶ 36-37. West Virginia Code Section 3-9-9 provides that **"no person may do electioneering in the polling place or within one hundred feet of the outside entrance of any polling place"** during the early voting period. Emphasis added. Compl. ¶ 17. *See also* W. Va. Code § 3-9-9.[1]

After Ms. Lewis read to Secretary Warner the text of Section 3-9-9, he placed a call to an attorney at the Secretary of State's office. Compl. ¶ 37. Secretary Warner handed the phone to Ms. Lewis, and the attorney informed her that a separate statute prohibited Ms. Lewis and Ms. North from being anywhere on the grounds of the polling location, despite the conflicting language in Section 3-9-9. Compl. ¶ 38. The statute to which Secretary Warner's office cited—Section 3-3-2a—is in direct conflict with Section 3-9-9 in that it prohibits electioneering **anywhere on the property of any designated early voting location.** Emphasis added. *Compare* W. Va. Code § 3-9-9[2] *with* W. Va. Code § 3-3-2a.[3]

---

[1] The electioneering statute further provides for criminal penalties: "Whoever violates any provision of this section shall be guilty of a misdemeanor and, on conviction thereof, shall be fined not less than $100 nor more than $1,000, or confined in jail for not more than one year, or both fined and confined." *See* W. Va. Code § 3-9-9(e).

[2] West Virginia Code Section 3-9-9 provides:
> No person may do any electioneering in the polling place or **within one hundred feet of the outside entrance of any polling place** where early voting is conducted during the period in which early voting is offered during the hours while such early voting is actually taking place. Emphasis added.

[3] Section 3-3-2a provides:
> No person may do any electioneering nor may any person display or distribute in any manner, or authorize the display or distribution of, any literature, posters or material of any kind which tends to influence the voting for or against any candidate or any public question **on the property of the county courthouse, any annex facilities, or any other designated early voting locations within the county,** during the entire period of regular in-person absentee voting. Emphasis added.

4

Early voting has become extremely popular in West Virginia, especially in Monongalia County. *See* Dominion Post Staff, *Mon County Ranks Second for Early Voting Turnout*, THE DOMINION POST, https://wajr.com/mon-county-ranks-second-for-early-voting-turnout/ (last visited March 19, 2019). The Mountaineer Mall poll is an especially popular location, which has been in use as a poll at least as far back as 2016. *See* Jeff McCullough, *Monongalia County Sees High Turnout For Early Voting*, THE MORGANTOWN NEWS, https://www.wvnews.com/morgantownnews/news/monongalia-county-wv-sees-high-turn-out-for-early-voting/article_04dccbf8-4113-5441-a21c-effc5136229d.html (last visited March 19, 2019) ("There were certainly plenty of voters populating polling location at Morgantown's Mountaineer Mall on Tuesday, with civic minded citizens packing the area."); *see also* Monongalia Early Voting 2016, http://www.friendsofbarbara.com/monongalia_county_early_voting_2016 (last visited March 19, 2019) (noting Mountaineer Mall as one of the 2016 early voting locations). There is no evidence that Mountaineer Mall will not continue to be used as an early voting site.

Plaintiffs North and Lewis have in the past been politically active in campaigns and electioneering outside of the Amendment One campaign. *See* North Declaration attached here as Exhibit A; Lewis Declaration attached here as Exhibit B. Plaintiffs intend to electioneer for candidates and causes in West Virginia in future elections, and seek to do so in locations like the Mountaineer Mall when the voters they seek to influence are present. *Id.* Plaintiffs, however, wish to conduct their constitutionally protected right to communicate with voters free from the threat of criminal prosecution.

On November 5, 2018, Plaintiffs filed in the United District Court of the Southern District of West Virginia, Charleston Division, a Complaint alleging that Secretary Warner, in

enforcing Section 3-3-2a against Plaintiffs—a statute providing for an undefined buffer zone outside of a polling place—violates the free speech clause of the First Amendment of the United States Constitution because it is not sufficiently tailored to serve a compelling government interest. *See* Compl. at Dkt. 2.

On March 5, 2019, Defendant filed a Motion to Dismiss. Dkt. 10. Plaintiffs respond now with their response to the motion to dismiss.

### III. ARGUMENT

#### A. Legal Standard

A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The existence of subject matter jurisdiction is a threshold question. *See CMH Homes, Inc. v. Browning*, No. 2:14-cv-12762, 2015 U.S. Dist. LEXIS 34183, at *7 (S.D. W. Va. Mar. 19, 2015). The two different methods for pursuing a Rule 12(b)(1) challenge were discussed in *Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982):

> First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

*Lerose v. United States*, 2006 U.S. Dist. LEXIS 101316, *18-19, 2006 WL 5925722 (S.D. W. Va. May 17, 2006).

Under a "facial attack," the defendant argues "that the allegations of the complaint are facially insufficient to sustain the court's jurisdiction." *Rose v. Kanawha County Bd. of Educ.*, 2016 U.S. Dist. LEXIS 40173, *11-12 (S.D. W. Va. Mar. 28, 2016). In that situation, the facts alleged in

the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

**B. This Court has Subject Matter Jurisdiction Because an Immediate Controversy Exists for Adjudication**

Defendant argues that this case presents no immediate controversy for adjudication, and is therefore moot. Def. Mot. Dismiss p. 4.

Defendant's reliance on *Golden v. Zwickler* is misplaced. In *Golden*, a congressman up for re-election was criticized in an anonymous handbill distributed by Zwickler. *Golden*, 394 U.S. 103, 105 (1969). During the pendency of the litigation, the congressman had left the state House of Representatives for a position on the Supreme Court of New York. *Id.* at 106. The United States Supreme Court noted that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 118 (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Court found that because the congressman had taken a position on the Supreme Court of New York, it was unlikely he would return to the House of Representatives. *Id.* at 109. As the subject of handbills only related to election campaigns and because Golden was no longer in an elected position, any suggestion that he might eventually return to politics would be "wholly conjectural." *See id.*

This case is easily distinguishable. The parties, Plaintiffs and Defendant Secretary of State Mac Warner, have adverse legal interests. *See generally* Compl. at Dkt. 2. Plaintiffs North and Lewis have an interest in distributing literature and engaging meaningfully with voters. *Id.* Defendant has an interest in enforcing laws limiting political speech at and around

polling places. *Id.* A substantial controversy exists in that Defendant is enforcing an unconstitutional statute that impermissibly limits Plaintiffs free speech rights to engage in political speech. *Id.* The controversy is of sufficient immediacy and reality in that enforcement of the unconstitutional statute will affect all elections in West Virginia going forward. Unlike in *Golden*, where the congressman left electoral politics to serve on Supreme Court of New York, elections will continue with frequency in West Virginia, the individual plaintiffs seek be involved in them, and Secretary of State Warner remains in a position to enforce an unconstitutional statute. The factors have been met to warrant the issue of an injunction and declaratory judgment.

C.  **This Court has Subject Matter Jurisdiction Because Plaintiffs' Claim is Capable of Repetition But Evading Review**

An exception to the mootness doctrine exists as to cases with an issue that is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

This exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

As demonstrated above, Plaintiffs' claim is not moot, but in the event the Court determines that there is no immediate controversy and the factors have not been met to warrant the issue of an injunction and declaratory judgment, Plaintiffs' claim fits squarely into the "capable of repetition, yet evading review" exception to the mootness doctrine.

The first prong of the exception requires that the duration of the challenged action is too short to be fully litigated. *Federal Election Com'n*, 551 U.S. at 462. In *Federal Election Commission v. Wisconsin Right to Life, Inc.*, Plaintiff Wisconsin Right to Life, Inc. (hereinafter "WRTL"), believing it had a First Amendment right to broadcast advertisements within a limited "blackout period," filed suit against the FEC seeking declaratory and injunctive relief regarding a statute that prohibited corporations from expending general treasury funds for certain electioneering communications during that time period. *Id.* at 460. Just prior to the commencement of the blackout period, the District Court denied the request for a preliminary injunction. *Id.* As a result WRTL did not run its ads, and the Complaint was dismissed. *Id.* On appeal, the United States Supreme Court vacated the judgment of the District Court and remanded. *Id.* The District Court found that the adjudication was not barred by mootness as the controversy was "capable of repetition, yet evading review" and the FEC appealed. *Id.* at 461. On appeal, the Supreme Court affirmed the District Court's findings, stating that it would be "entirely unreasonable . . . to expect that [WRTL] could obtain completed judicial review of its claims in time for it to air its ads: during the blackout period." *Id.* Other courts have noted that election cases "often fall within [the] exception, because the inherently brief duration of an election is invariably too short to enable full litigation on the merits"). *See, e.g., Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003); *see also Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir. 2013).

Similarly, it would be "entirely unreasonable" to expect that Plaintiffs, against whom the unconstitutional statute was enforced by Defendant on the last day of early voting, could obtain completed judicial review of their claims in time for them to return to the polling location and engage with voters prior to the end of early voting. Like the cases of *Wisconsin*

*Right to Life*, *Porter*, and *National Organization of Marriage, Inc.*, the short timeframe that necessarily surrounds elections affected Plaintiffs' ability to adjudicate their claim. That Plaintiffs could only continue to electioneer during the limited early voting period meant that their claims could not be reasonably resolved before the early voting period concluded.

The second prong of the "capable of repetition" exception requires a "reasonable expectation" that "the same controversy will recur involving the same complaining party." *Wisconsin Right to Life, Inc.* at 461 (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). Defendant wrongly asserts that Plaintiffs must show that the allegations underlying this case will ever arise again. Def. Mot. Dismiss at 4. Instead, Plaintiffs must only make a "reasonable showing" that they will again be subjected to the alleged illegality. *Id.* See also *Davis v. Federal Election Comm'n*, 554 U.S. 724, 735-36 (2008) (holding that there was a "reasonable expectation" that a challenged provision would be applied against a plaintiff in a future election even when said plaintiff had lost the election to an incumbent); *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991) (finding that just because an individual has lost an election, it does not render his claim as moot, as he "has run for office before and may well do so again"). Here, Plaintiffs North and Lewis are politically active, have been involved in campaigns and electioneering outside of the Amendment One campaign, and intend to electioneer for candidates and causes in West Virginia in the future, including at popular satellite early voting locations like the Mountaineer Mall.[4] Further, as the Mountaineer Mall poll is both a popular polling site and has been a polling place for early

---

[4] While these additional facts concerning the individual plaintiffs are not pleaded, they are supported by Plaintiffs' declarations. Plaintiffs are willing to amend their complaint to state these facts should the Court deem it necessary. *Cf. Independence Institute v. Federal Election Commission*, 216 F.Supp.3d 176, 185 (D.D.C. 2016) (Court found statement made at oral argument by party that he would run the challenged ad in next election sufficient to defeat mootness challenge even though plaintiff declined offer to amend complaint and statement was not contained in filed declaration).

voting since at least 2016, it can be reasonably expected that it will continue to be an early voting satellite location in the next election. Thus, in the likely event Plaintiffs participate in electioneering in a future election during early voting, the Secretary of State's Office, or county clerks and election officials operating under the guidance of the Secretary of State's Office, will enforce the unconstitutional statute against them and violate their First Amendment right to free speech.

Finally, Plaintiffs need not show that they would face actual enforcement actions; the presence of criminal sanctions is sufficient. *See St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481 (8th Cir. 2006) ("[W]hen a party brings a pre-enforcement challenge to a statute that provides for criminal penalties and claims that the statute chills the exercise of its rights to free expression, the chilling effect alone may constitute injury."); *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 101 (2d Cir. 2003) (plaintiffs met the threshold for establishing standing for a First Amendment claim by demonstrating an actual and well-founded fear that a law prohibiting speech would be enforced against them).

The exception to the mootness doctrine applies to Plaintiffs, this Court has jurisdiction to decide this case, and the case therefore warrants the issuance of an injunction and declaratory judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied and the Court should move forward in issuing an injunction and declaratory judgment.

By Counsel,

**AMERICAN CIVIL LIBERTIES UNION OF
WEST VIRGINIA FOUNDATION**

/s/ Loree Stark
Loree Stark
West Virginia Bar No. 12936
ACLU of West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
(304) 345-9246, ext. 102 / (304) 345-0207 (f)
lstark@acluwv.org


/s/ Anthony J. Majestro
Anthony J. Majestro
West Virginia Bar No. 5165
ACLU of West Virginia Foundation
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

VOTE NO ON AMENDMENT ONE, INC.,
a West Virginia Corporation;
KATHERINE LEWIS; and
STACY NORTH

    Plaintiffs,

v.

Civil Action No. 2:18-cv-1406

(Honorable Thomas E. Johnston)

MAC WARNER, SECRETARY OF
STATE OF THE STATE OF
WEST VIRGINIA, in his official
Capacity as Secretary of State

    Defendant.

### Declaration Under Oath of Stacy North

    I, Stacy North, declare and certify under penalty of perjury, pursuant to 28 U.S. Code Section 1746, as follows:

1. My name is Stacy North.

2. I am a resident of Morgantown, Monongalia County, West Virginia, and worked as a volunteer for the Vote No Coalition prior and up to the November 6, 2018 elections.

3. I was directed to engage with voters at the Mountaineer Mall polling location because it is a popular location for early voters.

4. During my time engaging with voters at the Mountaineer Mall for the Vote No Coalition, many voters came to and from the polling place.

5. In addition to my experience volunteering for the Vote No Coalition, I have participated in canvassing and phone banking for candidates and other political causes.

6. I am a board member for the Working Family Party and have participated in activities surrounding elections as part of the organization and intend to do so in the future.

7. I plan to volunteer in an individual capacity as well as in my capacity as a board member for the Working Family Party through canvassing and electioneering in future West Virginia Elections.

8. Given the popularity of the Mountaineer Mall as a polling location, I would use the opportunity moving forward to electioneer at that location during early voting.

    I declare and certify under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of March, 2019.

*/s/ Stacy North*

A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

VOTE NO ON AMENDMENT ONE, INC.,
a West Virginia Corporation;
KATHERINE LEWIS; and
STACY NORTH

     Plaintiffs,

v.

     Civil Action No. 2:18-cv-1406
     (Honorable Thomas E. Johnston)

MAC WARNER, SECRETARY OF
STATE OF THE STATE OF
WEST VIRGINIA, in his official
Capacity as Secretary of State

     Defendant.

### Declaration Under Oath of Katherine Lewis

I, Katherine Lewis, declare and certify under penalty of perjury, pursuant to 28 U.S. Code Section 1746, as follows:

1. My name is Katherine Lewis.

2. I am a resident of Morgantown, Monongalia County, West Virginia, and worked as a volunteer for the Vote No Coalition prior and up to the November 6, 2018 elections.

3. I was directed to engage with voters at the Mountaineer Mall polling location because it is a popular location for early voters.

4. During my time engaging with voters at the Mountaineer Mall for the Vote No Coalition, many voters came to and from the polling place.

5. In addition to my experience volunteering for the Vote No Coalition, I have participated in canvassing and phone banking for candidates and other political causes.

B

6. I plan to continue to engage in the political process by canvassing, making calls, and electioneering at the polls for candidates or causes I care about.

7. Given the popularity of the Mountaineer Mall as a polling location, I would use the opportunity moving forward to electioneer at that location during early voting.

I declare and certify under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of March, 2019.                    _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

VOTE NO ON AMENDMENT ONE, INC.,
a West Virginia Corporation;
KATHERINE LEWIS; and
STACY NORTH

    Plaintiffs,

v.

                              Civil Action No. 2:18-cv-1406
                              (Honorable Thomas E. Johnston)

MAC WARNER, SECRETARY OF
STATE OF THE STATE OF
WEST VIRGINIA, in his official
Capacity as Secretary of State

    Defendant.

## CERTIFICATE OF SERVICE

    I, Loree Stark, do hereby certify that on this 19th day of March, 2019, I electronically filed a true and exact copy of ***Plaintiffs' Memorandum of Law in Response to Defendant's Motion to Dismiss*** with the Clerk of Court and all parties represented by counsel using the CM/ECF System.

                                                           /s/ Loree Stark
                                                           West Virginia Bar No. 12936