IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

VOTE NO ON AMENDMENT ONE, INC.,
a West Virginia Corporation;
KATHERINE LEWIS; and
STACY NORTH

    Plaintiffs,

v.

Civil Action No. 2:18-cv-1406
(Honorable Thomas E. Johnston)

MAC WARNER, SECRETARY OF
STATE OF THE STATE OF
WEST VIRGINIA, in his official
Capacity as Secretary of State

    Defendant.

### PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**I.  INTRODUCTION**

This is a case wherein Defendant Secretary of State Mac Warner violated the constitutional free speech rights of Plaintiffs Vote No On Amendment One, Inc. (hereinafter "Vote No Coalition"), Katherine Lewis, and Stacy North when he prohibited them from engaging with voters within a constitutionally permissible distance from a polling location.

**II.  BACKGROUND AND STATEMENT OF THE FACTS**

The Vote No Coalition is, pursuant to its bylaws, "a nonprofit organized with a specific purpose, without limitation, to defeat Amendment No. 1, an amendment which was on the West Virginia ballot in November 2018." Compl. ¶ 10. The then-proposed amendment, if passed, would

change Article VI of the West Virginia Constitution to add a new Section 57, which would read: "Nothing in this Constitution secures or protects a right to abortion or funding of abortion." Compl. ¶ 11.

In the months leading up to the November 6, 2018 election, the Vote No Coalition engaged in a comprehensive effort to provide West Virginians information about how the passage of Amendment No. 1 would empower politicians to pass laws that further restrict abortion care with no protections for survivors of rape, incest, or when the health or life of the woman is at risk. Compl. ¶ 12. In urging West Virginians to vote no on Amendment No. 1, the Vote No Coalition employed strategies including, but not limited to, phone-banking, one-on-one conversations, and mass communications.

In 2018, the time period for early voting started on October 24 and concluded on November 3, three days in advance of the November 6, 2018 election. Compl. ¶ 14. The Vote No Coalition, in its ongoing effort to educate voters about Amendment No, 1, engaged volunteers to provide information to voters outside of polling places during the early voting period. Compl. ¶ 15.

On November 3, 2018, Plaintiffs Ms. Lewis and Ms. North were scheduled to volunteer for the Vote No Coalition from 3 p.m. to 5 p.m. at a polling location at the Mountaineer Mall in Morgantown. Compl. ¶ 18. An organizer for the Vote No Coalition, in an effort to ensure that the volunteers would not violate the relevant election law, advised Ms. Lewis and Ms. North to stand at a location near a dumpster that was approximately 100 feet away from the entrance to the polling location. Compl. ¶ 19.

Shortly after Ms. Lewis' arrival, a poll worker informed them that they were not quite 100 feet away from the entrance to the polling location and advised them to move next to a red car in a nearby parking lot. Compl. ¶ 22. After Ms. Lewis and Ms. North moved to the new spot, they began to engage with voters who were coming and going from the polling location.

Compl. ¶ 24. Ms. Lewis and Ms. North held signs, had literature available to distribute about the Vote No campaign, and answered questions that voters had about Amendment No. 1. *Id.*

On or about twenty minutes after Ms. Lewis and Ms. North moved to the new location, a man, who introduced himself as Secretary of State Mac Warner, approached Ms. North and informed her that she and Ms. Lewis were not allowed to be anywhere on the property of the polling location—including in the parking lot. Compl. ¶¶ 25-26.

Ms. North told Secretary Warner that her understanding of the law was that she and Ms. Lewis, on behalf of the Vote No Coalition, were entitled to be there, so long as they were 100 feet or more away from the polling location. Compl. ¶ 28. Secretary Warner advised Ms. North that West Virginia law provided that she and Ms. Lewis could not be **anywhere** on the property, even if their location was more than 100 feet from the entrance of the polling location. Compl. ¶ 29. Secretary Warner suggested a location close to a busy road that was located approximately 700 feet from the entrance to the polling location and was not visible from the entrance of the polling location. Compl. ¶ 30.

Ms. North and Ms. Lewis relocated to the area Secretary Warner suggested. Compl. ¶ 31. Because the location was next to ongoing traffic, Ms. North and Ms. Lewis did not have the opportunity to engage with voters beyond holding signage for drivers to see as they drove past the location. Compl. ¶ 32. Ms. Lewis and Ms. North were deprived of the opportunity to have conversations with voters or to provide them with literature. *Id.*

Voters were not walking to or from the polling location through the area where Ms. North and Ms. Lewis were located because they were able to park much closer in the parking lot where Ms. North and Ms. Lewis had previously been located. Compl. ¶ 33. Because voters were not able to walk at or near the location where Ms. Lewis and Ms. North were located,

Plaintiffs were unable to engage in discussion with voters or provide them literature about Amendment No. 1. Compl. ¶ 34.

Secretary Warner approached Ms. Lewis and Ms. North shortly after they relocated. Compl. ¶ 35. Ms. Lewis looked up the relevant law—West Virginia Code Section 3-9-9—on her phone and asked Secretary Warner why they were not allowed on the property of the polling location. Compl. ¶¶ 36-37. West Virginia Code Section 3-9-9 provides that **"no person may do electioneering in the polling place or within one hundred feet of the outside entrance of any polling place"** during the early voting period. Emphasis added. Compl. ¶ 17. *See also* W. Va. Code § 3-9-9.[1]

After Ms. Lewis read to Secretary Warner the text of Section 3-9-9, he placed a call to an attorney at the Secretary of State's office. Compl. ¶ 37. Secretary Warner handed the phone to Ms. Lewis, and the attorney informed her that a separate statute prohibited Ms. Lewis and Ms. North from being anywhere on the grounds of the polling location, despite the conflicting language in Section 3-9-9. Compl. ¶ 38. The statute to which Secretary Warner's office cited—Section 3-3-2a—is in direct conflict with Section 3-9-9 in that it prohibits electioneering **anywhere on the property of any designated early voting location.** Emphasis added. *Compare* W. Va. Code § 3-9-9[2] *with* W. Va. Code § 3-3-2a.[3]

---

[1] The electioneering statute further provides for criminal penalties: "Whoever violates any provision of this section shall be guilty of a misdemeanor and, on conviction thereof, shall be fined not less than $100 nor more than $1,000, or confined in jail for not more than one year, or both fined and confined." *See* W. Va. Code § 3-9-9(e).

[2] West Virginia Code Section 3-9-9 provides:
> No person may do any electioneering in the polling place or **within one hundred feet of the outside entrance of any polling place** where early voting is conducted during the period in which early voting is offered during the hours while such early voting is actually taking place. Emphasis added.

[3] Section 3-3-2a provides:
> No person may do any electioneering nor may any person display or distribute in any manner, or authorize the display or distribution of, any literature, posters or material of any kind which tends to influence the voting for or against any candidate or any public question **on the property of the county courthouse, any annex facilities, or any other designated early voting locations within the county**, during the entire period of regular in-person absentee voting. Emphasis added.

On November 5, 2018, Plaintiffs filed in the United District Court of the Southern District of West Virginia, Charleston Division, a Complaint alleging that Secretary Warner, in enforcing Section 3-3-2a against Plaintiffs—a statute providing for an undefined buffer zone outside of a polling place—violates the free speech clause of the First Amendment of the United States Constitution because it is not sufficiently tailored to serve a compelling government interest. *See* Compl. at Dkt. 2.

On March 5, 2019, Defendant filed a Motion to Dismiss. Dkt. 10. Plaintiffs responded. Dkt. 12. Defendant filed a second Motion to Dismiss on April 1, 2019. Dkt. 15 Plaintiffs respond now.

## III.   ARGUMENT

### A.   Legal Standard

A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The existence of subject matter jurisdiction is a threshold question. *See CMH Homes, Inc. v. Browning*, No. 2:14-cv-12762, 2015 U.S. Dist. LEXIS 34183, at *7 (S.D. W. Va. Mar. 19, 2015). The two different methods for pursuing a Rule 12(b)(1) challenge were discussed in *Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982):

> First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

*Lerose v. United States*, 2006 U.S. Dist. LEXIS 101316, *18-19, 2006 WL 5925722 (S.D. W. Va. May 17, 2006).

Under a "facial attack," the defendant argues "that the allegations of the complaint are facially insufficient to sustain the court's jurisdiction." *Rose v. Kanawha County Bd. of Educ.*, 2016 U.S. Dist. LEXIS 40173, *11-12 (S.D. W. Va. Mar. 28, 2016). In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

**B.    The Eleventh Amendment Does Not Bar This Suit Against the Defendant**

Defendant argues that the Secretary of State is protected by sovereign immunity and therefore the Eleventh Amendment bars the Court from hearing this suit. Def.'s br. 3-4. However, pursuant to the long-accepted doctrine of *Ex parte Young*, 209 U.S. 123 (1908), the rule of sovereign immunity does not apply when, as is the case here, Plaintiffs seek to enjoin state officials from acting in a manner which violates the U.S. Constitution:

> [I]ndividuals, who, as officers of the State, *are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act*, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Id.* at 156. Emphasis added. *See, e.g.*, *Lewis v. W. Va. Supreme Court of Appeals*, 985 F. Supp. 2d 776, 782 (S.D. W. Va. 2013) (Goodwin, J.) ("The *Ex parte Young* doctrine . . . allows federal courts to entertain suits challenging the constitutionality of a state official's action [and] rests on the premise that when a federal court commands a state official do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.") (internal citations and quotations omitted).).

The Secretary of State serves as the "chief election officer" of West Virginia and "oversees the election process throughout the state." *See* Duties of the Office of Secretary of State, *available at* https://sos.wv.gov/about/Pages/Duties-of-WVSOS.aspx (last visited Apr.

6

12, 2019); see also W. Va. Code § 3-1A-6 (a) (same). As the chief election officer of West Virginia, Defendant is responsible for administering and enforcing the election laws of the state. *Id.* Indeed, W. Va. Code § 3-1A-6(a) grants to the Secretary of State the authority to "make, amend, and rescind such orders" as may be necessary "to standardize and make effective the provisions of this chapter." When the Secretary of State issues such an order, all state and county election officials are required to abide by the order. *See id.* ("All election officials, county commissions, clerks of county commissions, clerks of circuit courts, boards of ballot commissioners, election commissioners and poll clerks shall abide by any orders that may be issued and any legislative rules that may be promulgated by the Secretary of State and the commission.")

Defendant's reliance on *McBurney v. Cuccinelli,* 616 F.3d 393, 399 (4th Cir. 2010), is misplaced. In *McBurney*, plaintiffs sought information from state agencies under Virginia's open records laws. *See McBurney*, 616 F.3d at 397-98. When plaintiffs did not receive information requested under those state laws, they sued the Attorney General for the Commonwealth of Virginia, arguing that the denials by those state agencies were an unconstitutional infringement on their rights. *See id.* The Court found that although the Attorney had "some general authority" to enforce the laws of the state, his relationship to the enforcement of Virginia's open records laws was so far attenuated that the *Ex parte Young* exception did not apply. *See id.* at 401. The Court's reasoning relied on precedent that established that a "special relation" requirement was necessary in order for injunctive relief to be effective. *Id.* 399 (citing *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008).

In *McBurney*, the plaintiffs were denied information by state agencies, not by the Defendant Attorney General. Conversely, in this case, the Secretary of State himself directly enforced the unconstitutional statute against Plaintiffs. Compl. ¶¶ 26-40. Defendant Secretary of State, in his capacity as the chief election officer of the state, told Plaintiffs they were in violation of state election law and that they could not be anywhere on the grounds of the polling location site. *Id.* at ¶ 29. Defendant further enlisted assistance from an attorney at his office to provide the statutory language of the law to which he was citing. *Id.* at 37-39. The Defendant, who has a duty to enforce and administer the election laws of the state, has not alleged that he at any time contacted any other enforcing authority to intervene.

As Defendant is a "state official" who is "clothed with some duty in regard to the enforcement of the laws of the state" pursuant to Section three of the West Virginia Code, he is not protected by sovereign immunity because, as the Supreme Court has held, "official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). The Eleventh Amendment does not bar the Court from entertaining this suit.

### C. Plaintiffs Have Article III Standing

Defendant further argues that Plaintiffs do not have the standing required under Article III of the Constitution. Def.'s Br. at 5-6. In order to meet the requirement for standing, the Plaintiffs "must show that [they have] suffered an "injury in fact" that is concrete and imminent; second, the injury must be 'fairly traceable' to the defendant's challenged conduct; and third, it must be likely that the injury will be 'redressed by a favorable decision.'" *Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 195 (4th Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*,

8

504 U.S. 555, 560-61 (1992). Although Defendant appears to concede that Plaintiffs have met the first and second requirements to achieved standing, Plaintiffs can nevertheless demonstrate that they have met all three elements.

### 1. Injury in fact

Plaintiffs have alleged an injury in fact. Specifically, after they were directed to move from the site of the polling location, Plaintiffs were no longer able "to engage in discussion with voters or provide them literature about Amendment No. 1. Compl. ¶ 34. Rather, instead of having the opportunity to have conversations with voters, Plaintiffs were restricted to "holding signage for drivers and passengers to see as they drove past the location." *Id.* ¶ 32. The Secretary of State's enforcement of an unconstitutional statute resulted in Plaintiffs irrevocably losing their right to meaningfully engage with voters.

### 2. Defendant's Challenged Conduct

Plaintiffs can further demonstrate that the injury in fact that they suffered is fairly traceable to Defendant's conduct. The causation element of standing is satisfied "where the plaintiff suffers an injury that is "produced by [the] determinative or coercive effect" of the defendant's conduct." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Here, Defendant's conduct in directing Plaintiffs to leave the polling site location directly resulted in the above-outlined injury.

### 3. Redressability

Defendant's standing argument largely hinges on its assertion that the relief requested by Plaintiffs would not redress their claims. Def.'s Br. at 5-6. The case on which Defendant relies, *Jemsek v. Rhyne*, 662 F. App'x 206 (4th Cir. 2016), is significantly distinguishable from the case at bar.

In *Jemsek*, the Court found that the plaintiff did not have standing in part because pursuing an action solely against *former* members of a board would provide no avenue by which his injury could be redressed as an injunction would not apply to former members of the board and an action for only declaratory judgment would not constitute redress. *Id.* at 210.

Here, Plaintiffs are bringing an action against the *current* Secretary of State, who in his official capacity sought to enforce the unconstitutional statute against Plaintiffs. An injunction would prevent the Secretary of State's Office, or county clerks and election officials operating under the guidance of the Secretary of State's Office, from enforcing the unconstitutional statute.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied and the Court should move forward in issuing an injunction and declaratory judgment.

**By Counsel,**

**AMERICAN CIVIL LIBERTIES UNION OF WEST VIRGINIA FOUNDATION**

/s/ Loree Stark_____
Loree Stark
West Virginia Bar No. 12936
ACLU of West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
(304) 345-9246, ext. 102 / (304) 345-0207 (f)
lstark@acluwv.org

/s/ Anthony J. Majestro
Anthony J. Majestro
West Virginia Bar No. 5165
ACLU of West Virginia Foundation
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**VOTE NO ON AMENDMENT ONE, INC.,**
a West Virginia Corporation;
**KATHERINE LEWIS; and**
**STACY NORTH**

      Plaintiffs,

                                  Civil Action No. 2:18-cv-1406
v.                               (Honorable Thomas E. Johnston)

**MAC WARNER, SECRETARY OF**
**STATE OF THE STATE OF**
**WEST VIRGINIA, in his official**
**Capacity as Secretary of State**

      Defendant.

### CERTIFICATE OF SERVICE

I, Loree Stark, do hereby certify that on this 15th day of April, 2019, I electronically filed a true and exact copy of ***Plaintiffs' Memorandum of Law in Response to Defendant's Motion to Dismiss*** with the Clerk of Court and all parties represented by counsel using the CM/ECF System.

                                              /s/ Loree Stark
                                              West Virginia Bar No. 12936