IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VOTE NO ON AMENDMENT ONE, INC.,
et al.,

                Plaintiffs,

v.                                      CIVIL ACTION NO.  2:18-cv-01406

MAC WARNER,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Vote No on Amendment One, Inc. ("Vote No Coalition"), Katherine Lewis ("Lewis"), and Stacy North ("North") (collectively, "Plaintiffs") bring this action against West Virginia Secretary of State Mac Warner ("Defendant"), in his official capacity. (ECF No. 2.) Plaintiffs allege that Defendant violated their First Amendment rights by enforcing against them a state statute that prohibits "electioneering" at early voting locations. (*Id.*)

Before this Court are Defendant's two motions to dismiss. (ECF Nos. 9, 15.) For the reasons explained more fully herein, Defendant's motions, (ECF Nos. 9, 15), are **GRANTED**.

        I.      BACKGROUND

Vote No Coalition organized to oppose "a proposed amendment to the West Virginia Constitution" that appeared "on the ballot for the November 6, 2018 general election in West Virginia." (ECF No. 2 at 3.) On November 3, 2018, Lewis and North volunteered with Vote No Coalition to "engage with voters" by holding signs, distributing literature, and answering voters'

1

questions about the proposed amendment at an early voting location in Morgantown, West Virginia. (*Id.* at 4–5.) Vote No Coalition instructed Lewis and North "to stand at a location near a dumpster that was approximately 100 feet away from the entrance to the polling location." (*Id.* at 4.) A poll worker "informed [them] that they were not quite 100 feet away from the entrance to the polling location and advised them to move next to a red car in a nearby parking lot," and Lewis and North complied. (*Id.* at 5.)

Twenty minutes after North and Lewis moved to the location near the red car, Defendant "approached Ms. North and informed her that she and Ms. Lewis were not allowed to be anywhere on the property of the polling location—including in the parking lot." (*Id.*) Defendant also told North "that there had been a complaint." (*Id.*) He instructed North and Lewis to stand "close to a busy road that was located approximately 700 feet from the entrance to the polling location and was not visible from the entrance of the polling location." (*Id.* at 6.) From the location Defendant suggested, North and Lewis "had to communicate the Vote No Coalition's message . . . by holding signage for drivers and passengers to see as they drove past the location." (*Id.*) They "did not have the opportunity to have conversations with voters or to provide them literature." (*Id.*)

North, relying on West Virginia Code § 3-9-9, explained to Defendant "that her understanding of the law was that she and Ms. Lewis . . . were entitled to be there, so long as they were 100 feet or more away from the entrance to the polling location." (*Id.* at 5, 7.) Defendant, relying on West Virginia Code § 3-3-2a, "advised Ms. North that West Virginia law provided that she and Ms. Lewis could not be anywhere on the property, even if their location was more than 100 feet from the entrance of the polling location." (*Id.*)

2

Plaintiffs filed a complaint for declaratory and injunctive relief against Defendant, arguing that West Virginia Code § 3-3-2a is unconstitutionally overbroad and that Defendant's enforcement of the statute against Plaintiffs violated their First Amendment rights. (ECF No. 2.) Defendant filed his first motion to dismiss on March 5, 2019. (ECF No. 9.) Plaintiffs filed a timely response, (ECF No. 12), and Defendant filed a reply, (ECF No. 13). Defendant then filed a second motion to dismiss on April 1, 2019. (ECF No. 15.) Plaintiffs filed a timely response, (ECF No. 17), and Defendant filed a timely reply, (ECF No. 19). Both motions to dismiss are fully briefed and ripe for adjudication.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1) Motion to Dismiss

"[A] defendant may challenge [this Court's] subject matter jurisdiction [through a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss] in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A "facial" challenge to jurisdiction attacks the complaint's allegations of jurisdictional facts. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In that manner, it is similar to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, in that "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. A "factual" challenge, on the other hand, involves an assertion "that the jurisdictional allegations of the complaint [are] not true." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016) (quoting *Adams*, 697 F.2d at 1219). When ruling on a factual challenge, "[t]here is no presumption of truth," and this Court "may . . . go beyond the allegations of the complaint and hold an evidentiary hearing to determine if there are facts to support the jurisdictional allegations."

3

*Id.* (internal quotation marks omitted). Defendant's challenge is facial because he relies on the facts alleged in Plaintiffs' complaint.

### B. Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its

4

judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III. ANALYSIS

#### A. Mootness

Defendant first argues that this action is moot because the general election is over and the issue against which Plaintiffs advocated was approved by voters. (ECF No. 10 at 4–8.) This Court's jurisdiction "extends only to actual cases or controversies." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citing U.S. Const., art. III, § 2). "When a case or controversy ceases to exist—either due to a change in the facts or the law—the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *Id.* (internal quotation marks omitted). "A case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016).

Relying on *Golden v. Zwickler*, 394 U.S. 103 (1969), Defendant contends that declaratory judgment "claims . . . related to a specific election cease to be an immediate controversy after the election in question is complete." (ECF No. 10 at 5.) The plaintiff in *Golden* was convicted under a New York state statute that "made it a crime to distribute anonymous literature in connection with an election campaign" after "distributing anonymous handbills in connection with the 1964 congressional election." 394 U.S. at 104–05. Although the complaint alleged that the congressman who was the target of the anonymous handbills was likely to be a candidate in future

5

elections and that the plaintiff would continue to distribute similar anonymous leaflets against that candidate in those future elections, the Court found it significant "that the Congressman had [since] left the House of Representatives for a place on the Supreme Court of New York" and "would not again stand for re-election." *Id.* at 105–07. The Court held that the plaintiff failed to establish that he was entitled to a declaratory judgment with respect to the constitutionality of the challenged statute because "the fact that it was most unlikely that the Congressman would again be a candidate for Congress precluded a finding that there was 'sufficient immediacy and reality' here." *Id.* at 109. In other words, because the complaint focused on that particular congressman and the particular anonymous handbills that were distributed, "it was wholly conjectural that another occasion might arise when [the plaintiff] would be prosecuted for distributing the handbills." *Id.*

Defendant argues that because Plaintiffs engaged in electioneering to oppose a certain proposed constitutional amendment that was adopted, "the prospect of any further electioneering by Vote No . . . is affirmatively unlikely," and the "generalized possibility" that "Lewis and North may choose to engage in other issues in future elections . . . is 'wholly conjectural.'" (ECF No. 10 at 6.) Plaintiffs respond that "[a] substantial controversy exists" because the parties "have adverse legal interests." (ECF No. 12 at 7–8.) They contend that Defendant's "enforcement of the unconstitutional statute will affect all elections in West Virginia going forward." (*Id.* at 8.) Plaintiffs further claim that "North and Lewis have in the past been politically active in campaigns and electioneering" and "seek to be involved" in future elections. (*Id.* at 5, 8.)

This action is clearly moot with respect to Vote No Coalition. Plaintiffs allege that Vote No Coalition was "organized with [the] specific purpose . . . to defeat Amendment No. 1, which will be on the West Virginia ballot in November 2018." (ECF No. 2 at 3.) Notably, Plaintiffs do not assert that Vote No Coalition will continue to engage in electioneering in future elections;

6

their arguments relate solely to the individual Plaintiffs. (*See* ECF No. 12 at 7–8.) Therefore, Vote No Coalition's claims against Defendant are moot because it has expressed no intention of conducting future activities deemed unlawful under the challenged statute. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 94–95 (2013) ("The case is moot if the court, considering . . . the plaintiff's anticipated future activities, is satisfied that it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to occur.").

The same is true with respect to Lewis and North. The election has passed, and Lewis and North do not allege that they are presently engaged in any electioneering at any location. It is also unlikely that Lewis and North will again advocate on behalf of Vote No Coalition because the single issue it was organized to oppose was approved by voters. The facts in the complaint thus fail to demonstrate a real, immediate controversy at this point.

Nonetheless, Lewis and North argue that their claims are not moot because the facts alleged in the complaint are "capable of repetition, yet evad[e] review." (ECF No. 12 at 8.) A matter falls under this exception to the mootness doctrine if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Williams v. Ozmint*, 716 F.3d 801, 809–10 (4th Cir. 2013) (quoting *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011)).

In general, "the election cycle is too short in duration for election disputes to be fully litigated within a single cycle." *Stop Reckless Econ. Instability Caused by Democrats v. FEC*, 814 F.3d 221, 232 (4th Cir. 2016) (citing *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969)). And such "disputes qualify as 'capable of repetition' when 'there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles.'"

*Lux*, 651 F.3d at 401 (quoting *N.C. Right to Life Comm. Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 435 (4th Cir. 2008)). Lewis and North argue that they "are politically active, have been involved in campaigns and electioneering outside of the Amendment One campaign, and intend to electioneer for candidates and causes in West Virginia in the future, including at popular satellite early voting locations like the Mountaineer Mall." (ECF No. 12 at 10.) They further assert that the Mountaineer Mall "will continue to be an early voting satellite location in the next election" because it "is both a popular polling site and has been a polling place for early voting since at least 2016." (*Id.* at 10–11.)

However, Defendant contends that Plaintiffs' claims "could not arise at any and every satellite voting location," and the locations differ for each election. (ECF No. 10 at 7–8.) State law provides that early voting locations "other than the county courthouse or courthouse annex" are chosen by the county clerk and the county commission 90 days prior to the election. W. Va. Code § 3-3-2a(b); W. Va. Code R. § 153-13-3.4. Given that the establishment of a polling place requires the approval of these entities as well as "the chairperson of the county executive committee of each of the two major political parties," W. Va. Code R. § 153-13-3.3.1; *id.* § 153-13-3.5, the early voting locations for the next election are, at this juncture, speculative at best. Therefore, this Court cannot conclude that there is a "reasonable expectation" that the facts alleged in the complaint will occur once more during the next election. The "capable of repetition, yet evading review" exception to the mootness doctrine does not save this action, and Defendant's motion to dismiss it as moot is **GRANTED**. Lewis and North may wish to bring another action in anticipation of the next election when their electioneering activities are more concrete.

*B. Standing*

Relatedly, Defendant argues that Plaintiffs lack standing to pursue this action because they "fail[] to show how the judgment requested will redress their injury." (ECF No. 16 at 7.) Defendant contends that a declaratory judgment in and of itself is inadequate to demonstrate redressability and that an injunction against him "would not redress Plaintiffs' claim in any immediate sense" because he has no authority to enforce the allegedly unconstitutional statute. (*Id.* at 7–8.) Plaintiffs respond that Defendant "in his official capacity sought to enforce the unconstitutional statute against [them]." (ECF No. 17 at 10.) They further assert that "[a]n injunction would prevent [Defendant] or county clerks and election officials . . . from enforcing the unconstitutional statute," but they do not explain how an injunction against Defendant binds "county clerks and election officials." (*Id.*)

To satisfy the "'irreducible constitutional minimum' of standing" and thus to invoke federal jurisdiction "at the pleading stage," Plaintiffs must allege facts demonstrating that their claimed injury "is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013).

The fatal flaw in Plaintiffs' argument is that, as Defendant points out, the very statute Plaintiffs allege is unconstitutional vests its enforcement authority in "[t]he official designated to supervise and conduct absentee voting" and "the sheriff of the county." W. Va. Code § 3-3-2a(d)(5). The prospect of redressability "becomes problematic when third persons not party to the litigation must act in order for an injury to arise or be cured." *Doe*, 713 F.3d at 755. Plaintiffs suggest that Defendant exercises control over election officials, presumably through his role as the

9

state's highest election officer, but they fail to elaborate on the source of such control. (*See* ECF No. 17 at 10.) Although West Virginia law provides that "election officials" must abide by any orders or legislative rules Defendant may issue as the chief election officer, W. Va. Code § 3-1A-6(a), such orders or legislative rules must be consistent with their statutory grant, Syl. Pt. 3, *Moore v. K-Mart Corp.*, 769 S.E.2d 35 (W. Va. 2015) ("Any rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute." (quoting Syl. Pt. 4, *Maikotter v. Univ. of W. Va. Bd. of Trs.*, 527 S.E.2d 802 (1999))). Plaintiffs fail to articulate any mechanism that renders Defendant capable of forcing other election officials' noncompliance with the statutory language. Therefore, an injunction against Defendant "prohibiting enforcement of West Virginia Code [§] 3-3-2a," (ECF No. 2 at 10), would have no effect on other election officials' ability to enforce the statute.

Further, Plaintiffs' sole remaining requested relief—a declaration of the statute's unconstitutionality, (ECF No. 2 at 10)—"cannot be the redress that satisfies the third standing prong." *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 513 (4th Cir. 1993). As such, Plaintiffs have no standing to prosecute this action, and this Court has no jurisdiction. Defendant's motion to dismiss the complaint on this basis is **GRANTED**.

### C. Eleventh Amendment Immunity

Finally, Defendant argues that the Eleventh Amendment bars Plaintiffs' action against him because he is sued only in his official capacity and the *Ex parte Young* doctrine does not apply. (ECF No. 16 at 5–6.) "The Eleventh Amendment shields a state entity from suit in federal court

if, in the entity's operations, the state is the real party in interest, in the sense that the named party is the *alter ego* of the state." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th Cir. 2014) (alterations and internal quotation marks omitted). Because an action against a state official acting in his official capacity is functionally equivalent to an action against the state, the Eleventh Amendment generally bars suits against state officials sued in their official capacities. *Adams v. Ferguson*, 884 F.3d 219, 224–25 (4th Cir. 2018).

The *Ex parte Young* doctrine is an exception to Eleventh Amendment immunity that "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010); *see Ex parte Young*, 209 U.S. 123 (1908). To "determin[e] whether the doctrine . . . avoids an Eleventh Amendment bar to suit," this Court evaluates "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). "Where," as here, "a state law is challenged as unconstitutional, [the] defendant must have 'some connection with the enforcement of the act' in order to properly be a party to the suit." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) (quoting *Lytle v. Griffith*, 240 F.3d 404, 409 (4th Cir. 2001)). This "special relation" requirement "ensures that a federal injunction will be effective with respect to the underlying claim." *Id.* at 333. "Primarily, the requirement has been a bar to injunctive actions where the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated." *Id.*

Plaintiffs rely on the assumption that Defendant's status as the state's "chief election officer" and his corresponding ability to issue orders and legislative rules that other election

officials must follow permit him to override the clear language of West Virginia Code § 3-3-2a. (*See* ECF No. 17 at 6–7.)  However, as this Court has explained, Defendant cannot use an order or a legislative rule to supersede clear statutory language.  Syl. Pt. 3, *Moore*, 769 S.E.2d 35.  Thus, while an injunction barring Defendant from enforcing § 3-3-2a against Plaintiffs would prevent a recurrence of the situation alleged in the complaint, it would have no effect on the ability of "[t]he official designated to supervise and conduct absentee voting" and "the sheriff of the county" to enforce the statute against Plaintiffs in the future.  W. Va. Code § 3-3-2a(d)(5).  Accordingly, the *Ex parte Young* exception to Eleventh Amendment immunity does not apply to Defendant, and his motion to dismiss the complaint on that basis is **GRANTED**.

IV. CONCLUSION

For the foregoing reasons, Defendant's motions to dismiss, (ECF Nos. 9, 15), are **GRANTED**.  This action is **DISMISSED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 24, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE